# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | | |
|---|---|---|
| Diane M. Nehmey, | ) | Case No 21-CV- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Unum Life Insurance Company of America | ) | |
| Defendant. | ) | |

## COMPLAINT

The Plaintiff, Diane Nehmey, by and through her undersigned counsel, John B. Tuffnell, files this Complaint against Defendant, Unum Life Insurance Company of America ("Unum") and in support thereof states as follows:

### I. PARTIES

1. Plaintiff, Diane Nehmey, ("Plaintiff" and "Ms. Nehmey") is a resident of Oak Creek, Milwaukee County, Wisconsin, and a citizen of the State of Wisconsin.

2. Defendant, Unum Life Insurance Company of America ("Unum") ("Defendant" and "Unum") is an insurance corporation domiciled in the State of Maine with its with its principal place of business at 2211 Congress St, Portland, ME 04122.

3. Unum is an active, registered insurer in the State of Wisconsin and is doing business in this judicial district.

1

4. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001. This Court has jurisdiction over the claims set forth in this Complaint pursuant to 29 U.S.C. §1331, in that this action arises under the laws of the United States. Specifically, Ms. Nehmey brings this action to enforce her rights under ERISA as authorized by 29 U.S.C. §1132.

5. Plaintiff was an employee of Anchor Bank, Inc., and as such, participated in a group employee benefit plan underwritten and administered by Defendant Unum that pays disability benefits to employees of Anchor Bank if they are unable to work due to sickness or injury.

6. Venue is proper in the Eastern District of Wisconsin Pursuant to 29 U.S.C. § 1132 (e)(2) because the employee benefit plan was administered in this District and a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

7. Plaintiff has complied with all prior requirements and conditions precedent for the filing of this lawsuit.

8. Plaintiff has exhausted the administrative remedies made available to her by Defendant Unum.

## II. FACTUAL ALLEGATIONS

9. In 2002, Ms. Nehmey applied for benefits under a group disability insurance policy issued by Unum to Anchor Bank, Inc. (the "Policy").

10. Unum approved Ms. Nehmey's claim for benefits for her short-term disability pregnancy claims by letter dated July 27, 2001.

11. Shortly thereafter, Ms. Nehmey developed complications from deep vein thrombosis ("DVT") and suffered a resulting stroke. She never returned to work. Instead, she continued to receive Short Term Disability Benefits from Unum until January 15, 2002.

12. Because of the effects of the stroke, Ms. Nehmey applied for Long-Term Disability ("LTD") benefits.

13. Unum approved Ms. Nehmey's LTD claim by letter dated January 24, 2002. Unum paid benefits every month until September 2017, based Unum's own conclusions on multiple occasions that Ms. Nehmey was disabled from both her own occupation and then, later, from any occupation.

14. In addition, Unum twice concluded that Ms. Nehmey was permanently and totally disabled *forever*.

15. By letter dated September 20, 2017, Unum decided that Ms. Nehmey was no longer disabled from any occupation, finding three jobs that it claimed Ms. Nehmey could do full-time.

16. Unum reversed that decision in 2018 after receiving Ms. Nehmey's first appeal, paid her back benefits, placed her back on claim, and paid benefits through January 18, 2019.

17. Unum has since decided that Ms. Nehmey once again is no longer disabled. Only this time, Unum asserts that Ms. Nehmey can perform the duties of *her regular occupation* going all the way back to 2001 as a supervisor of lending activities for a bank- -- a job that she hasn't been able to do for eighteen years.

18. Unum approved Ms. Nehmey's claim for LTD benefits in 2002 because she developed severe DVT and blood clots in her right leg and stomach after the birth of her second child.

19. At the time Unum approved the LTD benefits, internal Unum documents state that the medical records submitted by Ms. Nehmey established that she was unable to return to work at her regular occupation, which at the time was a Loan Processing Manager at Anchor Bank.

20. Unum paid Ms. Nehmey's LTD claim under the Policy because Ms. Nehmey's medical records continuously supported her inability to perform her occupation as supervisor lending activities.

21. Ms. Nehmey has continued suffer the effects of severe DVT and vascular circulatory issues. She has had medical attention for these issues and Unum has these records in its file.

22. Ms. Nehmey has never fully recovered from her DVT or her stroke.

23. Ms. Nehmey continuously suffers from an acute DVT condition and other vascular/circulatory issues. She must wear support compression stockings on both of her legs every day, for no less than eight hours a day, and have her legs elevated at no less than a 45-degree angle to help with circulation to try to eliminate blood clots. She is usually sitting in her recliner at home in her living room wearing support compression stockings for most activities. Since July of 2001 and still today, she can only sit in this position daily for a maximum of two hours at a time and then needs to get up and move around for a few minutes. She is unable to do any prolonged standing past one hour due to her circulation issues and DVT on a daily basis. Unum has these facts in its file.

24. Since July 18, 2001, Ms. Nehmey could not and still cannot walk for more than 1 1/2 hours a day, 2 hours max over a whole day and would be extremely tired and cannot do anything else that would require physical movement after that walking. Ms. Nehmey needs to rest/sleep for at least 2-3 hours after walking or standing for that time. The pain in her right leg is still continuous and she required hydrocodone multiple times a week. Her vascular issues make her fatigued on a chronic basis. Unum has these facts in its file.

25. All of the above-described functional and physical limitations are supported and verified by the findings of the Functional Capacity Examination Ms. Nehmey had on March 19, 2019. That examination established that "the client would have great difficulty working in any job at this time. Even when sitting she needs to prop her legs up to control her pain and swelling and this not a realistic position to maintain while working." This is the only functional capacity report to have

4

findings by a vocational professional who has actually met with Ms. Nehmey and tested her abilities.

26. Nobody from Unum has ever seen, tested, or treated Ms. Nehmey and Unum has never done a FCE to test Ms. Nehmey's functional or vocational abilities.

27. Ms. Nehmey's DVT, vascular insufficiency, and clotting issues caused a stroke in 2001 that also left her with vision impairment and cognitive deficits that continue to this day. Her right field of vision is *permanently limited*. She is restricted from seeing most things on her right side and must turn her head to the side to be able to see anything in her lower right field of vision. This makes it difficult for her to read words on papers because she does not see the whole page or whole word. Unum has these facts in its file.

28. Ms. Nehmey's vision issues have affected her cognitive processes. As it was described to her by her eye doctor, what her right eye does see is still slowly being processed by her brain, because that is the area of her brain that was most affected by her stroke.

29. Ms. Nehmey cannot process information in a fast- paced environment because she needs to take time to focus on what she is looking at. This mental process can be very tiring for her. As a result of the brain trauma from the stroke, Ms. Nehmey's reading dropped to a 6th grade level immediately after her stroke and only ever improved to a 9th grade level within a year after her stroke.

30. Ms. Nehmey has not worked since 2001. She has and does manage to perform some everyday household tasks for her family and herself. She has also been able to continue, as she did prior to the stroke, certain limited tasks for her husband's business, Nehmey Construction, Inc., but only for a few hours a month.

31. All of the daily tasks she is capable of are done when Ms. Nehmey is feeling well enough and for as long as Ms. Nehmey can sit or stand before she then must sit with her legs elevated. In fact, the limited tasks that Ms. Nehmey does for Nehmey Construction, Inc. are performed while Ms. Nehmey is sitting in her recliner with her feet elevated and for not more than a few hours a week.

32. Unum's file contains almost yearly submissions by Ms. Nehmey and her longtime treating physician Dr. Marshal Mirviss who has been treating Ms. Nehmey since 2001. Dr. Mirviss has consistently over the last seventeen years submitted the required documentation to Unum without issue. The Unum File establishes that Dr. Mirviss has consistently opined from the very beginning in 2001, that Ms. Nehmey was permanently disabled and suffering from leg pain, venous peripheral vascular disease, major visual field loss and fatigue. Dr. Mirviss has been consistent in his submissions stating that Ms. Nehmey is permanently disabled. The Unum File and its internal documents establish that Unum agreed with Dr. Mirviss's medical opinions in the past.

33. Ms. Nehmey received 60 months of LTD payments prior to January 16, 2007, because she could not perform her own occupation as supervisor of lending activities.

34. After January 16, 2007, and until January 18, 2019, a period of 12 additional years, Unum agreed that Ms. Nehmey continued to remain disabled as defined under the Policy because she was unable to perform the duties of *any gainful occupation* for which she was reasonably fitted by education, training or experience.

35. Unum twice offered Ms. Nehmey two lump sum settlement offers to buy out all future benefits under the Policy, one in 2008 and the other in 2015, showing that Unum twice thought Ms. Nehmey was permanently and totally disabled through age 65.

36. Ms. Nehmey has permanent restrictions and limitations from her stroke. Physical inactivity and older age are not causing Ms. Nehmey to have more stamina, become more functional, or be more fit for full-time work, especially in her regular occupation.

37. Unum's September 20, 2017 decision to terminate Ms. Nehmey's benefits was arbitrary and completely unfounded in fact. It was an unreasoned decision and unreasonable conclusion given Ms. Nehmey's medical history and the long time in which Unum itself declared Ms. Nehmey to be totally disabled.

38. Ms. Nehmey filed the March 15, 2018 Appeal Letter in response to Unum's claims asserted in the September 20, 2017 Letter and established that:

   a. There were medical records spanning sixteen years that support Ms. Nehmey's restrictions and limitations;

   b. Ms. Nehmey's restricted activities were consistent with vision impairment and cognitive deficits; and

   c. Then-current evidence showed that Ms. Nehmey was prevented from working full time within the requirements of sedentary work.

39. On April 9, 2018, Unum advised Ms. Nehmey that on receipt of her appeal and review of the letter and supporting documentation, she remained eligible for benefits as of September 21, 2017. Unum's Appeal Reversal Form dated April 9, 2018, stated its intent to reopen the claim and pay benefits. In fact, Unum reinstated Ms. Nehmey's benefits and paid her back benefits.

40. Ms. Nehmey continued to provide Unum with medical records to support her claim for benefits throughout 2018. Yet by letter dated January 18, 2019 and received January 28, 2018, Unum notified Ms. Nehmey that her LTD benefits were once again discontinued.

41. This time, Unum's claims personnel noted that Ms. Nehmey was not being treated for depression anymore and therefore was no longer disabled. To be clear, Ms. Nehmey never claimed disability due to depression.

42. Despite no change in her physical or vocational status or abilities, claimed in its January 18, 2019 Letter, that Ms. Nehmey is no longer precluded from performing the duties of her regular occupation of a supervisor of lending activities:

> Claimant Name: Nehmey, Diane M
> Claim Number: 506932
>
> January 18, 2019
> Page 2 of 6
>
> **Decision/Reason**
>
> We have determined Ms. Nehmey is not precluded from performing the duties of her regular occupation. She is not disabled under the policy and benefits are not payable as of January 18, 2019.

43. Ms. Nehmey timely appealed the January 19, 2019 denial.

44. Unum then scheduled her for an IME, which occurred on October 9, 2019.

45. Unum denied the claim once again by letter dated November 7, 2019.

46. This time, Unum changed the rationale from the one given in the claim denial letter in January 2019 and changed back to the "any occupation" standard, which is really a new rationale for claim denial. Despite proof that she remains disabled, Defendant Unum refused to reinstate Ms. Nehmey's Long Term Disability benefits.

## CLAIM FOR RELIEF FROM THE
## WRONGUL TERMINATION OF LONG-TERM DISABILITY BENEFITS
## PURSUANT TO 29 U.S.C. §1132(a)(1)(B)

47. Paragraphs 1 through 46 are hereby realleged and incorporated herein by reference.

48. Ms. Nehmey was forced to leave active employment due to her disability.

49. Ms. Nehmey has been unable to return to gainful employment.

8

50. Ms. Nehmey provided Defendant Unum with ample medical evidence to verify her disability under the Policy.

51. In violation of the Policy and ERISA Section 502(a)(1)(B), Defendant Unum intentionally and without reasonable justification terminated Ms. Nehmey's Long-Term Disability benefits that she is entitled to as an employee under the Policy.

WHEREFORE, the Plaintiff, Diane Nehmey, requests that the Court enter Judgment:

A. Finding that Plaintiff is entitled to Long Term Disability benefits and ordering Defendant Unum to pay the past due benefits.

B. Finding that Plaintiff, Katherine A. Jacobs is entitled to Long Term Disability benefits and ordering Defendant Unum to place her back on claim and pay for future benefits as they come due.

C. Awarding the Plaintiff interest on the amount of back benefits which remain unpaid.

D. Awarding the Plaintiff reasonable reimbursement for attorneys' fees and costs incurred as a result of Defendant Unum's wrongful termination of benefits.

E. Awarding all other relief as may be just and appropriate.

Respectfully Submitted,

<u>Electronically signed by John B. Tuffnell</u>

John B. Tuffnell
Bar No. 1047261
Attorney for Diane Nehmey

Salberg Tuffnell Law S.C.
790 N. Milwaukee Street, Suite 200
Milwaukee, WI 53202
(414) 550-2296
john@tuff-law.com